# Richmond.

## FREDENHEIM V. ROHR.

### April 30th, 1891.

1. INJUNCTIONS—*Refusal below—Remedy.*—Where court below, or a judge thereof, refuses an injunction, the remedy is by application to a judge of this court, accompanied by the original papers and the order of refusal.   Code 1887, § 3436.

2. IDEM—*Dissolution upon merits—Remedy.*—Where injunction has been dissolved by court below upon the merits, the remedy is by appeal here, or by motion to court below for its reinstatement, and appeal from its refusal to reinstate.

3. RECEIVERS—*Case at bar.*—Bill to have trust deed vacated on account of fraud, and for a receiver, was presented to the judge below, May 7th, 1889, who then granted injunction as prayed for, but ordered that defendants have reasonable notice of time and place of moving for receiver, and an opportunity to move to dissolve the injunction.   After injunction had been perfected, answers were filed putting in issue the material allegations.   On May 14th, 1889, the case came on to be heard on bill, answers, and affidavits, and motion to dissolve upon due notice.   Injunction was dissolved, and appointment of receiver denied. But bond was required of and given by trustee.   On May 15th, 1889, plaintiffs presented the original papers to one of the judges of this court, who awarded an injunction according to the prayer, and on plaintiffs' motion without notice to defendants, appointed a receiver to take possession of the trust property and sell same upon the terms of the deed.   And on May 21st, 1889, the judge below made an order that said receiver do take possession of said trust property.   *Held:* Award of injunction and appointment of receiver were without authority of law and void, and the order to take possession erroneous.

4. RECEIVERS—*Appointment—Notice.*—It is only in cases of extreme danger of loss of the property in question that reasonable notice of the time and place of applying for appointment of a receiver can be dispensed with.

Appeal from an order of the chancery court of city of Richmond, entered May 15th, 1889, and an order of the judge of that court entered May 21st, 1889, in a chancery cause wherein Nathan Rohr and others, creditors of M. S. Fredenheim, are complainants, and M. S. Fredenheim and others, are defendants.

The object of the suit was to annul, on account of fraud, a deed of trust executed by said M. S. Fredenheim April 27th, 1889, to Herman Rosenberg, trustee, and to enjoin the former and her husband and the said trustee from disposing of the trust effects, and to have a receiver appointed to take charge of and sell them according to the terms of the deed. Opinion states the case.

*Jos. Christian* and *E. Y. Cannon,* for the appellants.

*Pollard & Sands,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The bill charges that Margaret S. Fredenheim, being indebted to the complainants, with intent to hinder, delay, and defraud them and her other creditors, on the 27th of April, 1889, made a deed of conveyance of all her stock in trade to one H. Rosenberg, which deed was duly recorded in the clerk's office of the chancery court of the city of Richmond, and an official copy thereof is filed as an exhibit with the bill.

The prayer of the bill, after calling for answers from the defendants, is, that "the said H. Rosenberg, trustee as aforesaid, Margaret S. Fredenheim, and A. Fredenheim, her husband, acting as agent for the said trustee, may be enjoined and restrained from managing, controlling or selling the stock of goods lately owned by the said Margaret S. Fredenheim, at her store at No. 113 East Broad street, Richmond, Va.; that a receiver may be forthwith appointed by the court to take

charge of the said stock of goods and the other property conveyed by the said deed of April 27th, 1889, and, after due advertisement, sell the same upon such terms as may be prescribed by the court, and to proceed to collect, without delay, the notes and other choses in action conveyed by the said deed; that the decree of the court may be entered declaring null and void the said deed of April 27th, 1889, and directing the payment of the debts due your orators from the proceeds realized from the sale, &c.; and that such surplus as may remain may be administered under and by direction of the court, through a receiver to be appointed as before asked," &c.

This bill, charging fraud and collusion of fraud, and praying for an injunction, and to have the deed of trust of April 27th, 1889, vacated for fraud, and for the appointment of a receiver, was presented to Judge Fitzhugh in the chancery court of Richmond city on the 7th day of May, 1889, who, on that day, granted an injunction according to the prayer of the bill, but declared in the order that he deemed it proper that the defendants should have reasonable notice of the time and place of moving for the appointment of a receiver, as prayed for in the bill, and an opportunity to move to dissolve the injunction; and this accordingly took place. After this injunction had become effectual, the defendants filed their answers, denying and putting in issue all the material allegations of the bill.

The case came on to be heard on the 14th day of May, 1889, upon the bill and answers and sundry affidavits and counter-affidavits, upon due notice and motion to dissolve, before Judge Wellford sitting in the chancery court in the absence of Judge Fitzhugh, who had left the city, and was fully heard upon the arguments of counsel upon the motion to dissolve the injunction and to appoint a receiver, and for no other purpose; whereupon a decree was entered dissolving the injunction which had been awarded by Judge Fitzhugh on the 7th of May, 1889, and expressly denying the prayer of the bill for

the appointment of a receiver; but requiring the trustee, H. Rosenberg, to execute a bond, with approved security, in the penalty of $10,000, for the security of the fund and for the faithful discharge of his trust; which bond was accordingly promptly executed by the said trustee.

If the complainants in the bill were dissatisfied or aggrieved by this order of the chancellor dissolving the injunction, and denying the prayer of the bill for the appointment of a receiver, their plain remedy, as prescribed by section 3454, Code of 1887, was by appeal, or by application to the chancellor for a rehearing and re-instatement of the injunction, upon notice to the defendants; and. if that had been denied, they could have appealed from that denial; but they neither appealed from the order of dissolution, nor did they apply for a rehearing or re-instatement; but chose to present the very same bill, without any alteration or new matter, and without notice to the defendants, to a judge of the court of appeals; who, by his order of the 15th of May, 1889, addressed to the clerk of the chancery court of the city of Richmond, awarded the injunction according to the prayer of the bill, which had been dissolved the day before by the chancellor of that court upon full hearing and argument on the merits; and, on the motion of the complainants, and without notice to the defendants, and in their absence, and in the absence of their counsel, appointed one S. L. Bloomberg, as "a receiver of the chancery court of the city of Richmond, to take into his possession all of the property mentioned in the said deed of the 27th of April, 1889, and he is directed to take an inventory as to other stock of goods at No. 113 East Broad street, and proceed to sell the same for cash, as provided by the terms of the said deed, for and during the period of sixty days from the date of said deed."

After this order had been given and duly entered in the order-book of the chancery court of the city of Richmond, the complainants' counsel proceeded to the county of Fauquier,

where Judge Fitzhugh, the judge of the chancery court, was sojourning with a sick family, and, without notice to the defendants or their counsel, and in the absence of their counsel, obtained from Judge Fitzhugh the following order, dated May 21st, 1889:

"It appearing to the judge of the chancery court (of the city of Richmond) in vacation, that Sol. L. Bloomberg, who has been duly appointed and duly qualified as receiver in this cause, has made application to Herman Rosenberg, trustee in the deed of trust from M. S. Fredenheim to him, bearing date April 27th, 1889, for possession of the store and stock of goods therein, situated at 113 East Broad street, in the city of Richmond, and that said Rosenberg, trustee, has refused to give possession of the said store, and to turn over the said stock of goods therein to the said Bloomberg as such receiver, in accordance with the order herein entered, it is therefore ordered, by the said judge in vacation, that the sheriff of this city do forthwith proceed to put the said S. L. Bloomberg, receiver as aforesaid, in possession of the said store and stock of goods, situated at 113 East Broad street, in the city of Richmond, and lately occupied by M. S. Fredenheim as a millinery establishment.

"EDWARD H. FITZHUGH,
"Judge of said court."

From these orders of the chancery court of the city of Richmond the case is here upon appeal.

The jurisdiction of the supreme court of appeals, and of the judges thereof, is fixed by the constitution and statute law of Virginia. The 2nd section of the 6th article of the constitution of the State provides that the supreme court of appeals shall have *appellate* jurisdiction, *only*, except in cases of *habeas corpus, mandamus,* and prohibition; and the statute, section 3438, Code of 1887, under which the order of May 15th, 1889,

awarding the injunction and appointing a receiver, according to the prayer of the bill in this case, was confessedly made, is as follows:

"When a circuit or corporation court, or a judge thereof, shall refuse to award an injunction, a copy of the proceedings in court, and the original papers presented to the judge in vacation, with his order of refusal, may be presented to a judge of the court of appeals, who may thereupon award an injunction."

This statute confers no *original* jurisdiction upon one of the judges of this court to award an injunction, except in the case where the application has been made, first to a judge of an inferior court, either in term or in vacation, and has been *refused*. *Mayo* v. *Haines & Couts*, 2 Munford, p. 423; *Randolph* v. *Randolph*, 6 Randolph, 215; 1 Randolph, 415.

In these cases, this court has held that the court of appeals itself, sitting in *banc*, has no power to award an injunction that has been *refused* by a judge or court below, although a single judge of the court of appeals might, under the statute, exercise the power; but that, where an injunction had been awarded by a court below, and had been (as in the case under review) dissolved upon the merits, neither this court, nor any one judge thereof, could grant a new injunction or re-instate the dissolved injunction, upon the case made by the bill. In the case under review, we have the order of May 15th, 1889, awarding an injunction and appointing a receiver, made by a judge of the court of appeals, and directed by law to be entered as the order of the same chancellor, who had, the day before, dissolved the very same injunction and denied the prayer of the same bill for the appointment of a receiver, upon a full hearing of the whole case presented by the bill, answers, proofs, arguments, and notice of all the parties to the cause.

This action of the chancery court, in dissolving the injunc-

tion and denying the prayer of the bill for the appointment of a receiver, was reviewable by appeal under section 3454 of the Code of 1887; but, on the case presented, there was no power in this court, or in one of its judges, to appoint a receiver for the chancery court of the city of Richmond; and especially, as in this case, without any notice to the defendants. It is of the very essence of a motion for the appointment of a receiver, even by the court below, that notice shall be given to the defendants of the time and place of the application; and it is only in an extreme case, such that the exigency of the danger would be fatal, that a receiver can be justly appointed, even in and by the court in which the cause is pending, without reasonable notice to the defendants. (*See* High on Receivers, p. 75, section 111, and pp. 24 and 25, and Kerr on Receivers, p. 147 to 149; and the cases of *Bissom* v. *Curry*, 35 Iowa; *French* v. *Gifford*, 30 Iowa, p. 148; *Rogers* v. *Doherty*, 20 Georgia, 271; *People* v. *Norton*, 1 Paige, N. Y., 17; *Triebert* v. *Burgess*, 11 Maryland, 452; *Vorhell* v. *Heaton*, 26 Maryland, 83; *Gibbon* v. *Morris*, 8 Paige, N. Y., 481; *Sanford* v. *St. Clair*, 8 Paige, N. Y., 303; *Thompson* v. *Dieffendorfer*, 1st Maryland Ch. Dec., p. 489–90; *Verplank* v. *Mercantile Ins. Co.*, 2 Paige, 455.)

In the case of *Berry* v. *Briggs*, 22 Mich., Campbell, C. J., says: "The effect of this order (appointing a receiver) is to divest the entire legal estate of the defendant in property over which he had the exclusive control and exclusive title. ` * * * The order divests the whole body of the property, and puts its management as well as ownership in other hands. * * An adjudication which produces such important effects, and which actually transfers the entire estate from the defendant, is, to all intents and purposes, a decree, as far as it goes. * * * It would be a very singular thing if a court could, by anticipating the date of a decree which would be appealable, produce all the consequences of a decree, and yet deprive the party of

his right to recover. The statute regulating appeals has regard to the rights of parties, and not to senseless formalities."

This court has been emphatic in denunciation of decrees or orders entered *ex parte* and without hearing the parties affected and interested by such decrees or orders. (See *Underwood* v. *McVeigh*, 23 Gratt., 418.)

The facts of this case furnish a notable illustration of the wisdom of the well-settled policy of the law, which sets its face, sternly and constantly, against all orders, judgments, or decrees, pronounced *ex parte* and without opportunity of defence; and, even had the power to make the orders appealed from obtained under the constitution and law of the State, no case is made by the pleadings and the proofs in the cause for the appointment of a receiver. A bond, with approved security in the penalty of $10,000 (the same amount required of the receiver appointed) was required to be given, and was instantly given, by the trustee, and accepted by the court, for the preservation of the fund; and a large number of the leading merchants of the city of Richmond certified, that the trustee named in the deed was, from his knowledge of the business, and his character, peculiarly qualified to execute the trust for which he had been specially selected. The orders appealed from, that of May 15th, 1889, awarding the injunction and appointing a receiver for the chancery court of the city of Richmond, is *ultra vires* and void; and the order of May 21st, 1889, ordering the sheriff of Richmond city to put the receiver, S. L. Bloomberg, in possession of the store and stock of goods of the defendant, at No. 113 East Broad street, is erroneous, without authority of law, and void; and the judgment of this court is, to reverse and annul both of the aforesaid orders, and to remand the case, with directions to the chancery court of the city of Richmond to restore the trustee, Rosenberg, to the possession of the store and stock of goods to which he was entitled under the deed of trust of April 27th, 1889,

and to the administration of the trust; and for such further proceedings as shall be necessary in the premises.

LACY, J., dissenting, said:

This is an appeal from an order of the chancery court of the city of Richmond, entered on the 15th day of May, 1889, and the order of the *judge* of that court entered on the 21st day of May, 1889. The order of 15th day of May *supra*, was entered in the said chancery court by myself as one of the judges of this court in pursuance of sec. 3438 of the Code of Virginia, which is as follows:

"When a circuit or corporation court or a judge thereof shall refuse to award an injunction, a copy of the proceedings in court, and the original papers presented to the judge in vacation, with his order of refusal, may be presented to a judge of the court of appeals, who may thereupon award the injunction."

. The order of 21st of May, *supra*, was an order entered by the judge of the chancery court, directing the sheriff to enforce the said order of the 15th of May.

The said orders, and the order of the chancery court, of date May 14th, 1889, are all the orders copied in the record presented to one of the judges for an appeal in this case; but there was one other of date May 7th, which will be hereafter referred to, and which is made to play an important part in the opinion of the majority of the court.

This order of May 7th, 1889, was rendered upon the filing of the bill for an injunction, and for the appointment of a receiver.

The bill was filed by the appellees, creditors of the appellant, M. S. Fredenheim, and all other creditors who should come in and contribute their share of the expenses; alleging that the appellant, Margaret S. Fredenheim, who was conducting a millinery business in the city of Richmond as a sole

trader, was indebted to the said plaintiffs in large sums of money contracted as late as March 21st, 1889—to one, March 15th, 1889, and to another, March 1st, 1889, and that being thus so indebted by debts contracted about thirty days before, on the 27th of April, 1889, she made a deed by which all of her stock of goods was conveyed to a trustee, for the benefit of pretended debts, and creditors, with interest, to defraud them and her other creditors.

(1) That the said Margaret S. Fredenheim was largely indebted at the time of making the said assignment.

(2) That the fraudulent alienee, the trustee, was a hopelessly insolvent, broken merchant.

(3) That this fraudulent alienee was the brother of the only preferred creditor of first-class—in any amount—one Fannie Bottigheimer.

(4) That the said fraudulent alienee had actually participated in, and procured the said assignment with fraudulent intent.

(5) That the deed provided by an agreement beforehand that the grantor and her husband should continue the business by her trustee for sixty days, and remain in possession for that period.

(6) That after an assignment had been determined, and its terms arranged, and preferences provided for by said deed agreed on, she made large purchases of goods, and inflated her stock to an unreasonable degree.

(7) That she sold in Norfolk, and other cities not named, by her husband representing himself as a traveling salesman, large bills of goods *for cash, at prices far below the market value, and cost* of said goods, when such goods are usually sold on credit, and were so bought by her on credit.

(8) That in order to procure this credit for herself, this fraudulent grantor had made false statements, and estimates of assets.

That it was of the utmost importance to the said plaintiffs

that this fraudulent grantee and trustee should be removed, and be enjoined, and restrained from acting as trustee, and that a receiver be appointed to take charge of and sell the said goods under the order of the court, and praying for the appointment of the said receiver, and an injunction, &c.

Soon after the filing of this bill, his honor, Judge Edward H. Fitzhugh, on the 7th of May, entered the order of the court as follows:

"Upon reading the bill in this cause, the court is of opinion that the plaintiffs should give reasonable notice to the defendants, Margaret S. Fredenheim and A. Fredenheim, her husband, and to H. Rosenberg, trustee, *of the time and place of moving for the injunction, and the appointment of a receiver, and the court doth so order and direct.*

"And the court doth further order and direct, *that in the meantime and until the said motion can be heard and determined* (*what motion* was this to be heard and determined hereafter? obviously, *the motion for an injunction, and the appointment of a receiver*), the above-named defendants are enjoined and restrained from removing, selling, or in any way disposing of the stock of goods in the store No. 113 East Broad Street, Richmond, Va., in the bill and proceedings mentioned (and bond required in the penalty of five hundred dollars)."

In the opinion of the majority, this order is referred to in the following language:

"This bill (charging, &c., and praying, &c.), was presented to Judge Fitzhugh in the chancery court of Richmond city, on the 7th day of May, 1889. *Who on that day granted an injunction according to the prayer of the bill,* but declared in the order that he deemed it proper that the defendants should have *reasonable* notice of the time and place of *moving for the appointment of a receiver* as prayed for in the bill, and *an opportunity to move to dissolve the injunction,* and this accordingly took place after this injunction had become effectual." This is the

language of the majority referring to the order of May 7th, 1889.

The order itself says "the court is of opinion that the plaintiffs should give reasonable notice to the defendants (naming them) of the time and place of *moving for the injunction prayed for in the bill,* and for the appointment of a receiver, and *the* court *doth so order and direct.*"

But the opinion of the majority says "*that the court that day granted an injunction in accordance with the prayer of the bill,*" and "declared that it was proper to give notice of the time and *place of moving for the appointment of a receiver.*" I do not see in the order of May 7th, 1889, above inserted in full, *any justification* for this construction by the opinion. It evidently does not grant an injunction in accordance with the prayer of the bill, but expressly *declines* to do so *in words unmistakable,* until notice has been given to the other side.

I find, however, in the brief of the appellant, on page two, the following language:

"Bill was presented to Judge Fitzhugh in court, on the 7th of May, 1889, and the *judge* of the *chancery court had granted an injunction according to the prayer of the bill, but had directed that reasonable notice should be given to the defendants of the time and place of moving for the appointment of a receiver prayed for in the bill.*" This may be a mere coincidence, as great minds often run in the same channel; but obviously brief of counsel is not the record of the court under review.

This is the *fundamental error* of the opinion, and prepared the way for the others which culminated in what I regard as the erroneous conclusion.

This order of May 7th was followed by the order of May 14th. When notice having been given as required by the court, the order of that day was entered, as follows: "This day came the plaintiffs, Nathan Rohr and others, by counsel, and upon their motion for the appointment of a receiver made in open court, due notice of the time and place having been

given the defendants in this cause, according to the require-
ment of the *preliminary injunction* awarded herein, and on the
like motion of the defendants, by counsel to dissolve said in-
junction, and was argued by counsel. On consideration
whereof, and upon the reading of the bill, and the petition
heretofore filed in this cause. exhibits filed therein and affida-
vits filed in behalf of the plaintiffs in support of said motion,
to-wit : S. Trautman, S. W. Gerhardt, John L. Bake, and Edgar
W. Carrington, and the letter of M. S. Fredenheim addressed
to Messrs. Goldsmith, Bachrach & Co., and the certificates of
the clerk of the circuit court of the city of Richmoad, and the
chancery court, city of Richmond (these certificates of these
clerks were certifications of unsatisfied judgments .and de-
crees against the insolvent trustee, showing his insolvency
for many thousands of dollars of long standing), the answers
of the defendants treated as affidavits, and the paper marked
'I' signed by Thos. Potts and others, to the reading of
which paper and affidavit objection is made." (This paper
signed by Thos. Potts and others, is relied on in the opinion
and referred to as follows : "And a large number of the
leading merchants of the city of Richmond certified that
the trustee named in the deed was peculiarly qualified for
the trust in question)," "and the affidavit of M. S. Fredenheim
and H. Rosenberg, trustee, *the court doth refuse the injunction
prayed for in the bill, and the appointment of a receiver,* and doth
dissolve the *preliminary injunction* awarded in this cause on
the 7th day of May, 1889" (which let us remember *by its
terms* was expressly limited to the time when the motion to
award an injunction and for the appointment of a receiver
could be heard "*in the meantime, and until the said motion can*
be heard and determined.") "But the court being of opinion
that upon the application of any party in interest, a bond in
the penalty of ten thousand dollars with approved security,
may be required of the trustee, H. Rosenberg, for the faithful
discharge as such trustee, and the performance of his duties,

which bond was then tendered in open court by the said H. Rosenberg, trustee, with Thomas Potts and Fannie Bottigheimer as his sureties thereon, to which security no objection was offered, but in consequence of the absence of said securities at the moment, leave is given to said Rosenberg, trustee, to *execute said bond* in open court, to-morrow morning, at ten o'clock A. M., *along* with *his said sureties,* and the court doth accordingly direct that *said bond* be executed at said hour accordingly."

This is the full text of this order. Now let us see what reference there is to it in the opinion of the majority. Speaking of the 7th of May order, requiring notice of *the motion to award an injunction, and for the appointment of a receiver,* it says: "After this injunction had become *effectual* (!) (which by its terms was *in the meantime and until the said motion could be heard*) the case came on to be heard on the 14th day of May, 1889, upon the bill, &c , &c., and *upon* due notice and motion to dissolve, and was fully heard upon the arguments of counsel, upon the motion to dissolve the injunction, and appoint a receiver, and for no other purpose. Whereupon a decree was entered dissolving the injunction which had been awarded by Judge Fitzhugh on the 7th of May, 1889, * * * denying the prayer of the bill for. the appointment of a receiver, but requiring the trustee, H. Rosenberg, to execute a bond with approved security in the penalty of $10,000, * * * * * *which bond was accordingly promptly executed by the said trustee.*"

We see that in the opinion of the majority that it is said that the cause came on on the 14th day of May on the motion to dissolve the injunction, and for the appointment of a receiver, and for no other purpose, and a decree was rendered, dissolving the injunction, and refusing to appoint a receiver, but the order entered on that day, as appears on the seventh page of the printed transcript, says "*the court doth refuse the injunction prayed for in the bill, and the appointment of a receiver, and doth dissolve* (not the injunction prayed for in the bill,

but) the preliminary injunction awarded in this cause on the 7th of May, 1889" (that is the injunction awarded by the court upon its own motion, *in the meantime and until the motion to award the injunction prayed for in the bill could be heard upon notice.*)

And again, the opinion states that the bond of the trustee referred to "was accordingly *promptly* executed."

The decree of the court, on the other hand, as appears by the record, was not that the bond was promptly executed, but here is the very different language used by the record upon this subject, "*which bond was then tendered in open court* by the said H. Rosenberg, trustee, with *Thomas Potts* and Fannie Bottigheimer, as his sureties thereon, to *which security* no objection was offered, but in consequence of *the absence of said securities* at the moment, leave is given to said Rosenberg, trustee, to execute said bond in open court to-morrow morning, along with *his said securities*," so that said bond with said securities was not promptly executed; but so far as this record discloses, such bond never was executed, the security, *Thomas Potts*, was not only *absent at the moment,* but *remained perpetually* absent, and the bond subsequently filed and copied in the record, and containing his name, recited as one of the obligors, was never executed by him, although he is the same Thomas Potts no doubt who heads the list, of the "large number of business men of Richmond," referred to above, who knew H. Rosenberg for many years, &c.

Does the record justify the statement in the opinion, that the case came on and was fully heard upon the arguments of counsel upon due *notice* and *motion* to dissolve the injunction, and for the appointment of a receiver? On the contrary, it shows that the motion refused was one to grant an injunction and to appoint a receiver. But another inspection of the *brief of counsel for the appellant*, will show, on page two, how this misapprehension of the record came about. It is then said:

"*After said injunction had been awarded by Judge Fitzhugh, and*

*had become effectual, the defendants filed their answers* &ast; &ast; &ast; &ast;
*and the case being fully heard upon the arguments of counsel, and*
*the decree upon its face showing that the case was brought on upon*
*a motion to dissolve the injunction and appoint a receiver, and for*
*no other purpose, the injunction which had been thus awarded*
*by Judge Fitzhugh on the 7th of May,* 1889, *was dissolved and*
*the receivership asked for was denied, but the trustee, H. Rosen-*
*berg, was required to execute a bond in the penalty of* $10,000
*with approved security for the faithful discharge of his duties as such*
*trustee, which bond was accordingly executed."* When this lan-
guage was in the brief of counsel it was *simply executed,* but
when transplanted to the opinion, it was, in the exuberance of
the writer, "PROMPTLY executed;" whereas the bond offered in
court on the 14th of May, with sureties to whom no objection
was made, was *never executed at all.* The only bond filed was
executed by the Bottigheimer, who is the preferred creditor,
and chiefly interested in maintaining the alleged fraudulent
deed.

The *record* in this case shows that a bill was filed by credi-
tors of a defaulting debtor, who having greatly inflated a stock
of merchandize a fews days before, had sold large quantities
of the goods purchased recently and not paid for, not in the
usual course of business upon credit or for cash upon a profit,
but below cost price and for cash by sending her husband out
to make these secret sacrifices in distant cities, and then con-
veyed the unpaid for goods, not to secure the purchase price
for the same, but first to pay a large debt to the sister of the
trustee, and promised that the defaulting debtor, the husband,
should practically continue to manage and run the business
for sixty days, and the affidavits filed show that the alleged
trustee was not to be found about the premises, but that the
alleged fraudulent grantor and her husband were actually in
charge, and when anxious inquiries were made for this trustee,
he could not be seen, but the husband was there declaring that
he could attend to anything, and said that his wife proposed

to pay twenty-five cents on the dollar as a compromise. That the object of the bill was to set aside the said deed as actually fraudulent, and charged fraud upon the grantor and upon the grantee, and asked for an injunction to stop the sacrifice of the property in question, and to place the same in the bonded hands of a receiver of the court, charging and showing by judgments and decrees unsatisfied against him to the amount of thousands of dollars of long standing, that the trustee was insolvent, which insolvency the trustee admitted in his answer, and irresponsible; that the *hearing* of this motion for an injunction and the appointment of a receiver was adjourned for a few days to allow notice to the defendants, and in the *meantime and until* this motion could be heard, an injunction was temporarily awarded until the motion to award an injunction and appoint a receiver could be heard upon notice; that upon notice being given, and the motion heard, the injunction was refused, but the trustee required to give a bond.

That upon this refusal of the chancery court judge in open court to award an injunction, an application was made to one of the judges of this court, as is expressly authorized by section 3438, which says, "When a circuit or corporation court, or a judge thereof, shall refuse to award an injunction, a copy of the proceedings in court, and the original papers presented to a judge in vacation, with his order of refusal, *may be presented to a judge of a court of appeals who may thereupon award the injunction;*" and the same *was awarded* accordingly.

It is idle to say that such an act was *ultra vires*, as is said in the opinion of the majority. The next section of the Code directs that such order shall be certified to and become an order of the court below, and this was so ordered accordingly.

Without moving to dissolve this injunction in the court below, and without a transcript of the record, except the bill, the order of May 14th, 1889, and the order of the judge of this court awarding the injunction, and the order of the judge of the chancery court enforcing the same, an appeal was ap-

plied for and obtained. The petition for an appeal sets forth
that the judge of the chancery court, Judge Wellford, sitting
for Judge Fitzhugh, "entered an order dissolving a *prelimi-
nary order* entered by Judge Fitzhugh and refusing to appoint
a receiver, *and also* REFUSING TO AWARD AN INJUNCTION PRAYED·
FOR IN THE BILL, and yet the opinion states that this order
*dissolved the injunction* which *had been awarded according* to the
prayer of the bill, *upon full hearing and argument upon the
merits.* And the opinion of the majority further says: "If
the complainants in the bill were dissatisfied or aggrieved by
this order of the chancellor, their plain remedy as prescribed
by section 3454, Code of 1887, was by appeal."

Upon turning to section 3454 of the Code of Virginia, we·
see that it prescribes that "any person who is a party to any
case in chancery wherein there is a decree or *order dissolving·
an injunction, or to any case requiring money to be paid, or
the possession or title to property to be changed, or adjudica-
ting the principles of a cause, or in any case in which there·
is a *final* judgment, decree or order, may present a petition," &c.

Now, under this section, where could the plaintiffs in this
case lawfully find authority to present a petition for appeal?·
The decree of the court says that *it refuses to award an injunc-
tion,* how was the case heard and decided upon its merits?

The object of the suit was to annul an alleged fraudulent
deed. Was this deed annulled? or did the court refuse to an-·
nul the same? Not by any of the decrees in this record.

The bill sought to subject the property conveyed in the
deed to the payment of the debts of the plaintiffs, was this·
prayer granted or denied? It certainly was not granted.
Did the court below do anything else than refuse to award an·
injunction, and refuse to appoint a receiver, and require the·
trustee to give a bond? This was all, and yet we are gravely
told that if the plaintiffs were aggrieved by this order, deci-
ding nothing, and refusing to do any thing except to require·
the trustee to give a bond at the suit of creditors who had

brought their suit to that end, their remedy was by appeal. There is no authority for this position in the § 3454 of the Code of Virginia. This authority must be sought for somewhere else than the Code, or in any previous decision of this court.

In a paper copied in the record, signed by the appellant's counsel, this supposed law is set forth as follows:

"This decree of the 14th of May, 1889, was rendered upon the bill, answers and depositions of witnesses, and arguments of counsel upon a full hearing of the case, upon the questions raised upon due notice."

"If the decree of the chancery court was erroneous, the plaintiff's remedy was by appeal from that decree." * * * *

The jurisdiction of the supreme court of appeals, and of the judges thereof, is fixed by the constitution and statute law of the State. A judge of said court may award an appeal or writ of error upon a petition and copy of a record in a proper case. An order dissolving an injunction, or appointing a receiver by the express terms of the statute, and made subjects of appeal in a proper case. See Code '87, § 3454.

If there are any such express terms in this statute, they do not appear to be embodied in any of its words.

No such construction had ever before been placed upon section 3454, and it was not easy to anticipate such a construction. So the plaintiffs having been refused an injunction by the chancery court in accordance with the prayer of the bill, as the order itself says, and not being by any law then in force entitled to an appeal, under section 3438 of the Code of Virginia, applied to a judge of this court for an injunction. That section provides, as we have said, that "when a circuit (which includes chancery court, of Richmond) or corporation court, or judge thereof, shall refuse to award an injunction, a copy of the proceedings in court, and the original papers presented to the judge in vacation, *with his order of refusal,* may be presented to a judge of the court of appeals, *who may thereupon award an*

*injunction."* Here is the authority in the law under which the judge of this court acted, when the injunction was awarded. Yet that action is characterized as *ultra vires.*

This rather high-soundmg phrase, used a good deal in the brief of counsel, has no rightful place in the opinion of the majority, *if everything there urged were correct.* It has no application, as seems to be supposed, to a case where a court or judge has proceeded in excess of his jurisdiction, but is a phrase which refers to the exercise by corporations of powers not granted in the act of their creation? It is agreed that corporations cannot exercise their powers for purposes foreign to their creation. This is a question of no interest in this discussion, yet for the benefit of enthusiastic counsel I refer them, and the learned writer of the opinion in this case, to Mr. Bouvier's Dictionary, Vol. 2, p. 760, *Ultra Vires.* Dillon Mun. Corp , § 381, Vol. 1; Id. Vol. 2, § § 749, 766; 13 Amer. L. Rev., 632; Min. Inst., Vol. 2, p. 549; Ang. & A. Corp., 117. These text writers fully explain the legitimate use of the phrase in question.

The opinion contains the following:

"This statute (§ 3454) confers no original jurisdiction upon one of the judges of this court to award an injunction, *except in the case where the application has been made first to a judge of an inferior court, either in term time, or vacation,"* and cites cases.

It is hard to realize that this language was seriously used with reference to this case, in the light of the decrees already recited from the record (and there are no others in it). We have been helped to an explanation of the startling statements in the opinion several times in this discussion, by turning to read the strange things to be found in the appellant's brief. On the first page of this brief we find the following: "No original jurisdiction was conferred upon any (judges) of the court of appeals to award an injunction, except in those cases in which the application has been first made to a judge of the

inferior court, either in term time, or vacation, and been refused," citing the same cases.

A good deal of complaint is found in the appellant's brief, that the order complained of was made without notice, and *Underwood* v. *McVeigh* is cited as a case in point, and all this to the extent of whole pages of printed matter is transferred solidly to the opinion.

But an inspection of the record shows that it has not the remotest application to this case; the fullest notice was everywhere required and given, and the fullest hearing accorded; the chancery court, as all have seen, did not take the first step without notice, and every order entered in the case before the order granting the appeal, was an order in that court. What has *Underwood* v. *McVeigh* to do with this case?

The next question raised and urged by counsel, and taken up and adopted by the opinion, is that a judge of this court, in awarding an injunction when it has been refused by the court below, is without authority to appoint a receiver. These are inconsistent positions taken by counsel, it being contended at one time that the court below did not refuse to award an injunction. But as the opinion adopts them, I will remark that the question as to whether a judge of this court, when awarding an injunction to go as an order in the court below, must, in some cases, necessarily appoint a receiver, as in this case, or destroy the rights of property involved, by leaving the property without a hand to hold or to protect and guard; and that the grant of the authority to award the injunction, carries with it as a necessary incident the authority to appoint a receiver.

But, equally true, is it that that question is not worth discussing in a dissenting opinion, as it is no longer an open question in this court, except so far as it is disturbed by this case, which is not at all, as the opinion makes this out to be, a case where an injunction was granted, and dissolved upon the merits. In the case of *Graeme* v. *Cullen*, 23 Gratt., 282, 285,

Judge Joynes, of this court, so acted, awarded an injunction, and appointed a receiver, as did Judge Burks in the case of *Richardson* v. *Wilcox*, from the circuit court of Charles City, while I was the judge of that circuit. *Beverly* v. *Brooke*, 4 Gratt., 189, 212; *Pearce* v. *Whitehead*, 12 Gratt., 83. Upon the merits enough has been said already for the purpose I have in view, to put myself right upon the record, and for that purpose I have quoted largely from the record.

One word as to the propriety of the order granting the appeal. The order refusing to award the injunction was rendered on the 14th May. The order made by one of the judges of this court was made on the 15th of May. The defendants defied this order, denouncing it as *ultra vires*, as the opinion has done. Application was made to me to supplement it, and enforce it; this I declined to do, as that was the province of the chancellor below; this the chancellor did by decree entered on the 22d of May.

On the 23rd of May, the next day, one of the judges of this court, the writer of the opinion, granted an appeal, which was interpreted to reverse and nullify the order awarding the injunction, without any consultation with the judge who had awarded the injunction whatever, and this, as I have shown from the record already, without obtaining a transcript of the record, as is required by section 3457, Code of Virginia, one of the decrees relied on not being copied; only eleven pages being brought up, whereas it was necessary subsequently to bring up one hundred and eighteen pages in addition, consisting chiefly of the petitions of numerous creditors seeking to set aside the deed as fraudulent. Affidavits flatly contradicting one the other, not a deposition taken in the case, no principle in the cause settled, the possession of the property unchanged, because in this case the trustee was in court, and the receiver was in court as soon as he qualified, which he did do, and the possession of the property was in the hands of the court in either case, and there had been no order dissolving the injunc-

tion, and no final decree in the cause, and no motion had been made in the lower court to dissolve the decree awarding the injunction; clearly there was no order in the case to which by law, and according to the unbroken decisions of this court, up to this time, to which an appeal would lie. See the case of *Jameson* v. *Jameson*, 86th Va. Rep., 54; and cases cited.

I think the appeal was unauthorized by law, was improvidently awarded, and should have been dismissed without move, as was moved by the appellees.

And for the foregoing reasons I dissent from the opinion of the majority on all points.

No appeal lies in this State from an order awarding an injunction and appointing a receiver; certainly not in a case like this, where the property was in the hands of the court's officer, where there was no motion made in the lower court to dissolve this injunction, and no proofs taken, and no decision on the merits.

RICHARDSON, J., also dissented from the opinion of the court.

DECREE REVERSED.