## 𝔚ytheville.

WILDER v. KELLEY, JUDGE.

July 16th, 1891.

MANDAMUS TO CIRCUIT COURT JUDGE.—Where a circuit court judge refuses to award an injunction, the remedy is by application, accompanied by the original papers and the order of refusal, to a judge of this court, who may review and reverse the action of the circuit court judge, and award the injunction; which injunction, so awarded, it is the province of the circuit court judge to enforce and restrain any disobedience thereto, by attachment or other proper process. Nor does it matter that the injunction in question is the second or supplemental bill for an injunction, since a motion to re-instate the injunction on additional evidence, is in the nature of an original application for an injunction ; and where the circuit judge refuses to enforce obedience to such injunction so awarded by a judge of this court;

HELD:

The writ of *mandamus* will be issued.

On petition of Jonas Wilder and others for a writ of *mandamus* against John A. Kelley, judge of the circuit court of Washington county.

*W. W. Gordon, F. S. Blair, R. M. Brown, Dan. Trigg, Fulkerson, Page & Hurt, A. H. Blanchard,* and *A. M. Dickenson,* for the petitioners.

*Wm. J. Robertson, J. B. Richmond, R. A. Ayres,* and *J. H. Wood,* for respondent.

LACY, J., delivered the opinion of the court.

It appears that on the 6th day of August, 1890, an injunction was granted by the circuit court judge, sitting in the county of Russell, to the petitioners, on their bill praying the same, and a receiver appointed, in accordance therewith, for the Virginia, Tennessee and Carolina Steel and Iron Company, the South Atlantic and Ohio Railroad Company, the Bailey Construction Company, and the Bristol Land Company, and others; and these companies, their agents, &c., were enjoined from all further interference with the said receiver and the affairs, property and effects and management of these companies. Under this order the receiver qualified as was required; but circumstances not now necessary to be set forth so hindered the execution of this order, by conflicting orders of the circuit court judges—one sitting and acting in a circuit court not his own by authority of law, during the illness of the incumbent judge, on the one hand, and *ex-parte* orders by the sick judge, in his bed-chamber, on the other hand—that the same plaintiffs prepared a supplemental bill of injunction, and asking the appointment of a receiver, and set forth therein the substance of the original bill, and a narrative of the subsequent new facts, and presented it to the incumbent judge, the respondent herein, and prayed for an injunction. Upon this bill the respondent made an endorsement as follows : " Injunction refused.—Jno. A. Kelley, judge of the sixteenth judicial circuit of Virginia."

Whereupon the complainants, as authorized by section 3438 of the Code of Virginia, by which it is provided that " When a circuit or corporation court, or judge thereof shall refuse to award an injunction, a copy of the proceedings in court, or the original papers presented to a judge in vacation, with his order of refusal, may be presented to a judge of the Court of Appeals, who may thereupon award the injunction," presented the said bill, &c., and the order of refusal of the circuit court judge endorsed thereon, to one of the judges of this court, and by him, as his order states. upon consideration of the bill,

exhibits, affidavits, and order of refusal, an injunction was awarded according to the prayer·of the bill, restraining the defendants, their agents, &c., from in any manner interfering with the said properties and effects of the said companies, and restraining the directors of these companies from acting as such until the further order of the court. And, as incident to the injunction order, and for the purpose of preserving·the property affected thereby, and for protecting the rights and interests of all parties in interest, and that the court may hold the property subject to the litigation pending, and administer to the parties their rights respectively, it was ordered that upon the perfection of the injunction awarded, by the execution of the *required bond*, &c., that John M. Bailey be appointed a receiver in this cause, and, as such receiver, to take·charge and possession of the property and assets of the companies named above. The receiver was required to execute bond in the penalty of $20,000, whereupon the said receiver was to be put into possession, by writ to that end directed by the clerk to the sheriff, &c.

This order was, in part, executed, when, before its complete execution, the United States marshal, under an *ex-parte* order of the Federal circuit court judge, rescued the property from the hands of the sheriff, put him out before he had gotten full possession, and prevented him from completing the same. This interference was of short duration, the said order of the Federal circuit court being shortly thereafter annulled by the order in the *case*, of the Chief-Justice of the United States, by which the whole subject was remitted to the circuit court of the State of Virginia, John A. Kelley, the respondent, being the judge thereof, of Washington county. Whereupon the sheriff again attempted to enforce the order of the judge of this court, referred to above, but, as is stated, he was resisted by an armed force, and prevented thereby from an execution of the said order. The plaintiffs applied to the respondent, judge of the circuit court as aforesaid, to enforce the said

order of the appellate judge, by proper directions to the sheriff.

But the respondent refused to enter and enforce this order, but took the case upon a motion to dissolve the injunction of the appellate judge, and upon a motion to enjoin and restrain the order of such judge, and also to hear rules for contempt, and decided that there was no jurisdiction in a single judge of the Supreme Court of Appeals to control, by vacation orders, the action of a circuit court in its direction to its receiver, or in enforcing injunctions pending in the circuit court, and that such appellate judge had no jurisdiction to modify, alter, or otherwise control the same, nor had he power to enter orders enforcing the same, and that the order of the appellate judge was null and void, and that the partial possession obtained under it was unlawful, and dismissed the proceedings for contempt for disobedience thereto, and, without otherwise disposing of the case on its merits, continued the same, possession of the property, assets, &c., to remain in the hands of the defendants until the 25th day of July, 1891. Whereupon, after giving notice as required by the statute, the plaintiffs applied for the peremptory writ of *mandamus* from this court, to compel the said John A. Kelley, judge, to enter and enforce the order aforesaid of the appellate judge.

The said John A. Kelley, judge, answers and says that the acts complained of were judicial acts, and submits that, although they should be held erroneous, they cannot be corrected by *mandamus;* and further stated that Joseph L. Kelley never appeared as counsel in the case; and, in a written statement of considerable length, reiterated his refusal to enter and enforce the order of the appellate judge, and declares the same null and void, and that when the receiver undertook, under the order of the appellate judge, to take possession as there authorized, in contravention of the order of respondent, he was guilty of an unlawful act and in contempt.

It will thus be seen that Judge John A. Kelley, a judge of

an inferior court, has refused an injunction, and endorsed his refusal on the bill praying the same; that then, as authorized by the law of this state, as above cited, the plaintiffs in the said bill had presented the bill, with the order of refusal of the said circuit court judge entered thereon, to one of the judges of this court, by whom the injunction was awarded, and a receiver appointed and directed to take possession of the property; and that, passing by intervening interruptions, as narrated above, the said order was presented by the plaintiffs to the circuit court judge, who declined to enter and enforce the same, and declared the same null and void, issued without authority of law, and any act done thereunder in contempt of his court.

Now, let us briefly consider what is the law :

(1.) The statute confers upon the appellate judge authority to render such order. What is the character of this duty ? It cannot be declined by the appellate judge. He must act, and when he does act, is it the action of an inferior judge, subject to the review of the circuit court judge, who, when it is presented to him, may enter and enforce it if he approves it, or annul it if he does not approve it? This is obviously not so. It is not only not in contemplation of law that the appellate judge is to do an act subject to the approval of the circuit court judge *as his superior*, but he is authorized by the law to act only when he has refused his action, and in contravention and review thereof. It is an appellate action, and an appellate power conferred on one of the judges of the Supreme Court of Appeals to annul an action of the circuit court judge which appears to him to be improper and erroneous. And if the pretension of the respondent is correct, then, as soon as he has been to this extent reviewed and reversed, he is immediately transferred from his inferior station, and made an appellate judge of an appellate judge, on whose action he may in turn sit with appellate power, and as the appellate judge has declared his action erroneous, so now he will declare the act of the

appellate judge null and void, and hold all acts done under it
in contempt of his superior authority. This is the *reductio ab
absurdum*, and not only declares the action of the appellate
judge null and void, but annuls the law itself; because, if the
order of the appellate judge was, in contemplation of law, to
be by leave of the circuit court judge whom he overruled, then
none can discern the object of the law.

But this contention of the circuit court judge is not only
not the law, but is sustained by no opinion of any court, nor
of any jurist, ever delivered. The law of this State is that
this order which comes to the inferior judge, made over his
head by the law's prescript, must be by him enforced—entered
and enforced. There is no other rational construction to be
placed upon the statute itself.

Decided cases upon this subject are, therefore, not frequent.
It was settled early in this century that when an injunction
had been refused by a circuit court judge, and afterwards
awarded by an appellate judge, it was the province of the
inferior judge to enforce the same, and restrain any disobedi-
ence to the same, by attachment or other proper process, and
this compelled the chancellor *sitting in review of the order of his
superior* to enforce the same by effectual measures. *Tollbridge*
v. *Freebridge*, 1 Ran. 206.

But the respondent insists, further, that the act in question
has no application to this case, because the injunction in ques-
tion was the second and a supplemental bill for an injunction;
but there again he is plainly at fault. Long ago (1823) that
question also was put to rest by this court, when this court
held that a motion to reinstate the injunction on additional
evidence, tendered by the complainant, was in the nature of an
original application for an injunction, and that, on the refusal
of the chancellor to reinstate the injunction, an application to
the judges of this court, or any of them, (under the act of Rev.
Code, 1819, Vol. I, p. 205, § 44) was proper under that act, and
was not to be discharged by the chancellor (or inferior judge).

*Gilliam* v. *Allen*, 1 Rand. 414. And so the law has remained to the present time.

The respondent cites the late case of *Fredenheim* v. *Rohr*, reported in 87 Va. 764, as sustaining his view; but there again he is at fault. In that case the order of the appellate judge was not set aside and annulled by the chancellor, but by him entered and enforced, and the receiver put in position by the court's mandate to the sergeant directed. The order of the appellate judge was annulled in that case and the receiver set aside, but not by the chancellor. This was done by the Court of Appeals, under the sanction of a majority of the judges. The mistake this circuit judge has made is in installing himself into the prerogative of sitting in appeal upon the order of his superior. That the Court of Appeals may annul such an order none will deny, but that is a different matter from the inferior judge undertaking this appellate *role*.

It is clear—too clear for further argument—that the respondent, an inferior judge, had no right nor power to annul this order.

But it remains yet to consider whether *mandamus* is the proper remedy to compel this judge to obey the law, or if he may annul the order, and by dilatory orders and continuances, under the guise of exercising judicial discretion, reviewable by appeal only, entirely defeat the same.

Without entering at length into a discussion of the nature and origin of the writ of *mandamus*, it is sufficient to say it is an extraordinary remedy, in cases where the usual and ordinary modes of proceeding are powerless to afford remedies to the party aggrieved, and when, without its aid, there would be a failure of justice. It is said to be a high prerogative writ, usually issuing out of the highest court of general jurisdiction in a state, in the name of sovereignty, directed to any natural person, corporation, or inferior court of judicature within its jurisdiction, requiring them to do some particular thing herein specified, and which appertains to their office or

duty. 3 Bla. Com. 110; 4 Bac. Abr. 495; *Marberry* v. *Madison*, 1 Cru. 137, 168. It was introduced to prevent disorder from a failure of justice and a defect of police. Therefore it ought to be used upon all occasions where the law has established no specific remedy, and when, in justice and good government, there ought to be one. Lord Mansfield in *Rex* v. *Barker*, 3 Burr. 1265; Lord Ellenborough in *Rex* v. *Archbishop of Canterbury*, 8 East, 219.

But the party must have a perfect legal right, and the remedy extends to the control of all inferior tribunals, corporations, and public officers, and even private individuals in some cases. Ang. & Ams. Corp. 761.

It is the proper remedy to compel the performance of a specific act when the act is ministerial in its character, but when the act is of a discretionary character, or of a judicial nature, it will lie only to compel action generally.

The general rule on this subject is that, if the inferior tribunal or corporate body has a discretion and exercises it, this discretion cannot be controlled by *mandamus;* but if the inferior tribunal refuse when the law requires them to act, and the party has no other adequate legal remedy, and when, in justice, there ought to be one, *mandamus* will lie to set them in motion to compel action, and, in proper cases, the court will settle the legal principle which should govern, but without controlling the discretion of the subordinate jurisdiction.

*Mandamus*, of course, will not lie to compel a judicial tribunal to decide any question submitted to its discretion in any particular way, and I will go further and say that, while it will lie to compel the inferior tribunal to act, speaking generally, if to act or not to act is matter submitted by law to the court's discretion, it will not lie.

Now let us inquire what discretion is vested in an inferior tribunal, when it receives the mandate of a superior court, which, by lawful authority, has reversed its action? If the circuit court of Washington county renders an erroneous

decision, and the case is brought here by an appeal or writ of error, and the erroneous decision is reversed, and the mandate of this court is sent down, must that judicial tribunal review and revise or reverse and annul in its turn, at its discretion? Can it exercise any discretion, or must it implicitly obey the mandate as it is written. It obviously can have and may exercise no discretion, but it must enter and enforce the same, and, if it fails or refuses, *mandamus* would lie to compel obedience and compliance. If it may with impunity refuse to enter and enforce such order, to what end is an appellate tribunal established? Back and forth from one court to the other orders go and come, each in turn reversing the other, and each powerless to enforce any order. Such is not the law.

When a mandate goes down from the appellate tribunal to the inferior tribunal, whose action has been reviewed and reversed, there is no discretion; that has been exercised, and in the exercise been exhausted, so far as it is established by the law; and the simple province of the inferior tribunal is to obey the command of the superior.

Now, let us see, the circuit court judge is vested by law with a discretion to grant or to refuse to grant an injunction when the bill is presented to him, and *mandamus* will not lie to compel him to grant nor to compel him to refuse to grant the injunction; but when he has exercised his discretion, and refused to grant the injunction—and the law provides that, in the discretion of the appellate judge, upon application, he may exercise his discretion, and refuse to grant or grant the injunction, which is to be certified to the inferior court—what discretion further has the inferior court in the premises? None whatever. The lower court has been in so far reversed by the appellate court judge, by lawful authority, and the lower judge must enter and enforce the same, and he has no discretion in the premises This being so, why should not *mandamus* issue to compel the court to act? It is settled law that when this order from an appellate court or an appellate judge, made in

review of the order of an inferior court, comes down, the lower court must enter and enforce it. It is an order in his court in the latter case, and it is an order in his court in the former case; but it is there in each case for him to enter and obey. He may not set aside and annul it upon any pretext whatever. That may be done in a proper case by the Court of Appeals when, in the latter case, it reaches that tribunal; but it is not the province of the lower court to do this. Being, then, a matter of plain duty, and in no wise dependent upon any discretion of any sort, it must be entered and enforced as made, and *mandamus* will lie to enforce the performance of this plain legal duty.

We have said nothing concerning the merits of the case. They are in no wise involved, and do not affect this decision in any degree. Whether the order was a proper one cannot, in this proceeding, be considered by this court. That the case is exceptional in character, as the respondent declares, and whether, as is freely asserted, armed resistance is made, and may again be made by organized bands of lawless men, armed and banded to defy the law, is not now the question. When this order here made goes down it will be obeyed by the judge below, and when the mandate issues accordingly, the law will be enforced, and the mandate of the courts executed. It may be safely considered that the orders of the judiciary will be enforced in this case, as in all others in this state. The *mandamus* will issue as prayed for.

Lewis, P. (dissenting), said:

The judgment awarding a *mandamus* in this case is, in my opinion, so extraordinary and unprecedented, that I deem it proper to state the reasons that constrain me to dissent from it. The history of the controversy, briefly stated, is as follows:

In July, 1890, John M. Bailey and others filed their bill in the Circuit Court of the United States for the Western District of

Virginia, against the Virginia, Tennessee & Carolina Steel & Iron Company, the South Atlantic & Ohio Railroad Company, the Bailey Construction Company, and the Bristol Land Company, praying an injunction and the appointment of a receiver. The Honorable John Paul, one of the judges of the said court, refused, upon the presentation of the bill to him, to grant the prayer of the bill, without notice to the defendants. Notice was thereupon given, but before any further action was taken, the bill was dismissed by the complainants. On the same day, to-wit, on the 6th of August, 1890, the same complainants and one or two others presented a substantially similar bill against the same defendants to the Honorable D. W. Bolen, judge of the fifteenth judicial circuit of Virginia. The latter at the time was holding a court in Russell county, in the sixteenth circuit, for the respondent, the Honorable John A. Kelley, to whom the bill was addressed as the judge of the circuit court of Washington county.

Upon the presentation of the bill, Judge Bolen, without notice to the defendants, granted an injunction, and appointed the said Bailey, *one of the complainants, and a non-resident of the state,* receiver of all the property of the defendant corporations, aggregating several millions of dollars in value, and required an injunction bond in the penalty of $500, and a receiver's bond in the penalty of $10,000. The order, however, was expressly made subject to " the further order of the court or the judge thereof in vacation."

As can readily be imagined, the proper officers of the defendant corporations, upon learning that such an order had been made, lost no time in applying to the judge of the court to vacate it. And an order was promptly made by Judge Kelley suspending its operation for twenty days, in order to afford the defendants an opportunity to give notice of a motion to dissolve the injunction. The suspension, however, was only partial, as in several important particulars the order *was not affected, but was left in full force,* by the suspending

order. Notice was accordingly given, but before the day fixed for the hearing of the motion, the case was removed by the defendants to the Circuit Court of the United States.

In this posture of the case, the complainants, on the 16th day of August, 1890, presented what they termed a "supplemental bill" to Judge Kelley, almost identical in its terms with that upon which Judge Bolen had acted, and containing the same prayer. Upon this bill the judge inadvertently indorsed the words, "Injunction refused," whereupon, on the same day, without notice to the defendants, it was presented to one of the judges of this court, who awarded an injunction and appointed a receiver, as prayed for. The order was directed to the clerk of the circuit court of Washington county, and, in pursuance of its mandate, the sheriff of the county put the receiver into possession of all the defendants' property in that county, as appears by the return on the process issued by the clerk of the circuit court, which is made a part of the record before us. It seems, however, that on the same day, or soon afterwards, possession of the property was restored to the defendants, by the United States marshal, in obedience to an order of the Federal court.

Some months afterwards the case was remanded from the last-mentioned court to the state court, soon after which the complainants applied by petition to Judge Kelley to enforce the order made by the judge of this court. They averred in their petition that after the case had been remanded, the officers of the defendant corporations forcibly resisted the sheriff in his attempt to again put the receiver into possession, and had thus put themselves in contempt.

About the same time, the defendants gave notice that on the 11th of June, 1891, they would move Judge Kelley to dissolve as well the injunction awarded by the judge of this court as that previously awarded by Judge Bolen. This motion was opposed by the complainants, on the ground that the duty of Judge Kelley to enforce "the order of Judge Richardson"

was purely ministerial; that it was therefore his duty to enforce it at once, and that he had no discretion in the matter. This view, however, was not sustained by Judge Kelley, who decided that the order was void, and that the defendants were not in contempt; and he postponed the hearing of the motion to dissolve until the 25th of July.

The complainants thereupon presented a petition to this court for a *mandamus* to compel Judge Kelley to enforce the orders made by Judges Richardson and Bolen, " before allowing the defendants to invoke the jurisdiction of the circuit court of Washington county." To this petition Judge Kelley filed an answer, and the case having been fully argued, the judgment of this court is to award the *mandamus*, requiring " *the order of Judge Richardson* " to be forthwith carried into execution.

But, in legal contemplation, is there any such order? Section 3438 of the Code provides that when a circuit or corporation court, or a judge thereof shall refuse to award an injunction, a judge of this court may award it. But did Judge Richardson have authority, under the circumstances of the present case, to make the order that he did? I think not. When the order was made, the injunction awarded by Judge Bolen was still in force, or, at least, had not been dissolved, although its operation had been partially suspended for twenty days. Hence, there was no authority on the part of Judge Richardson to act, inasmuch as it is only when an injunction is *refused* by an inferior court or judge that a judge of this court may award it.

Judge Kelley's endorsement on the supplemental bill (so called), as he says in his answer, was misleading. An injunction in the cause having been already awarded, which had not been dissolved, he had no power, as he expresses it, to award " an injunction on an injunction." " Though called a bill for an injunction," the answer avers, " it was in effect a motion in disguise to dissolve the suspending order, with intent to take the chances, in the event of a refusal, of applying to another

judge. So apparent, indeed was this," the answer further states, that respondent promptly refused to consider it. Being in great affliction and seriously ill at the time, respondent yielded to pressure, and made the endorsement—'injunction refused.' This was hastily done, and in form it no doubt directed Judge Richardson's mind from the fact that the bill was merely an indirect mode of getting rid of the suspending order. Respondent ought to have endorsed that he declined to act for want of notice to the adverse side, regarding it as a mere motion to dissolve the suspending order."

And I fully concur in the further averment in the answer that in any view, a judge of this court had no power, under the circumstances, to act in the premises, and that the order made by Judge Richardson was, therefore, void.

But let it be supposed that it was valid. It was directed to the clerk of the circuit court of Washington county, by whom as the record shows, it was entered, and, in point of fact, as we have seen, it was *enforced* by the sheriff's putting the receiver into possession, although that possession, without any fault on the part of the sheriff, was of short duration. But, when entered, whose order did it become? This the statute answers by providing that when in such a case an injunction is awarded, *the proceedings thereupon shall be as if the order had been made by the court, or the judge thereof, to whose clerk the order is directed.* Code, sec. 3439.

The order, then, made by Judge Richardson became in contemplation of the statute, as much the order of the circuit court of Washington county as if it had been signed by Judge Kelley, or entered by him in open court, and hence was no less subject to his control. What authority, then, is there for now calling it "the order of Judge Richardson"? None, I think, whatever. Upon its receipt by the clerk of the circuit court, it was as much an interlocutory decree of that court as the previous order made by Judge Bolen. And whoever heard of a chancellor sitting to hear a motion to enforce one of his own

interlocutory decrees, or to dissolve an injunction, who was not acting judicially? There is nothing ministerial about it. It is purely a judicial function, *i. e.*, a duty calling for the exercise of judicial discretion, and nothing else. The proposition, to my mind, is so plain that nothing can make it plainer than the mere statement of it. To argue it, it seems to me, is like arguing that two and two make four.

The idea that in making the order Judge Richardson was exercising an appellate power is, I think, a mistaken view. When a judge of this court awards an injunction, he exercises a special original jurisdiction with which he is clothed by the statute. At all events, his act, when completed, is as if the order had been made by an inferior judge of court; nothing more. The statute upon this point seems to me too plain to be misunderstood.

And here it is pertinent to inquire: If a circuit court or judge, to whose clerk an order awarding an injunction by a judge of this court is directed, has no discretion respecting it, but must literally enforce it, as a ministerial duty, how is such an order to be dissolved or gotten rid of at all? Are the parties aggrieved by it remediless until a final or other appealable decree has been entered? Could *that* have been the intention of the legislature? And yet such is the case if the theory of the majority of the court be correct. Meanwhile, to whose orders is the receiver appointed by such an order subject? And can he be removed for misconduct or other cause? These are important questions which will no doubt arise in the future, and as to which we can now only conjecture.

As to the question of the alleged contempt, little need be said. First, because it is clear, I think, there has been no contempt; and, secondly, because if there had been, that could not affect the application for a *mandamus*. The alleged contempt consists in the refusal of the defendant's agents to surrender possession of the property to the sheriff, to be by him again turned over to the receiver, after the case was

remanded from the Federal court. And the contention is that the defendants are not entitled to be heard, either to move for a dissolution of the injunction, or for any other relief, in the circuit court, until they shall have purged themselves of their contempt.

But what authority had the sheriff to act in the matter? He had executed the process that promptly issued on the order made by the judge of this court, after its entry in the circuit court, and his authority without a further order from the last-mentioned court, was at an end. The possession which, under that process, he delivered to the receiver, had been restored to the defendants by an order of the Federal court, and when the case was remanded to the state court, the sheriff, as the case then stood, had no more authority to act than any private individual. But suppose he had, and that the defendants were in contempt. Is the circuit court, in the exercise of its judgment in dealing with that question, to be controlled by *mandamus?* This could hardly have been seriously contended for, although much was said about it in the argument at the bar.

To enter into a discussion of the nature and office of the writ of *mandamus* is wholly unnecessary. There is nothing more familiar to the profession. The writ is never available when there is another adequate remedy, and hence, will not lie in any case where the alleged error may be corrected on a writ of error or appeal. Neither does it lie to control the exercise of judgment or discretion. The only acts that can be rightfully controlled by it are such as are purely ministerial. As was said in *Wise* v. *Bigger*, 79 Va. 269, while the writ lies to compel the performance of a purely ministerial duty, *so clear and specific that no element of discretion enters into it,* yet as to all acts or duties calling for the exercise of judgment or discretion on the part of the officer or body sought to be coerced, it will not lie.

The application of this test to the present case shows, I think, beyond all doubt that the writ ought not to be awarded. If

it ought, then I see no reason why the execution of any inter-
locutory decree in a chancery cause in this state may not be
compelled by *mandamus*.  The opinion of the majority of the
court is, I think, not only without a precedent, but without
any correct foundation whatever.  If Judge Kelley has erred,
it has been in the exercise of his judicial discretion, and the
law has provided an ample remedy by which, at the proper
time, those errors may be corrected, which remedy is by
appeal.

I deem it not improper, however, to add, that if the whole
case were now before us on appeal, there is nothing in the
action of Judge Kelley which, in my judgment, is open to
criticism.  It is apparent that in his course he has been actu-
ated throughout by a desire to exercise his judgment rightly.
The record, I think, abounds with reasons which justified him
in stopping to look carefully into the case, after hearing coun-
sel, before proceeding to further carry out the interlocutory
order granting an injunction and appointing a receiver—an
order made without notice to the defendants, and requiring
property worth millions of dollars to be turned over to one of
the plaintiffs in the cause, as receiver, upon his executing a
bond, the inadequacy of which as a security is simply amazing.
I refer now to the order of Judge Bolen, for I consider, as
Judge Kelley did, that the order made by the judge of this
court is out of the case.  But if it were not, the result would
be the same.

In their petition addressed to Judge Kelley, praying him to
dissolve the injunctions awarded by Judges Bolen and Rich-
ardson, and to hear all the matters together which had been
brought to his attention, the defendants, among other things,
aver :

" Your petitioners [defendants] do not owe the complainants
anything.  Their claims are false and fabricated.  Your peti-
tioners charge that complainants entered into a conspiracy to
wreck and loot the defendant corporations, and that pursuant

to the conspiracy, their claims were trumped up for the pur-
pose. And that they imposed upon and induced Judges Bolen
and Richardson to grant the orders before-mentioned.

" Your petitioners further charge that the object of the
conspirators is to get possession of the properties of the said
corporations and as much money belonging thereto as possible;
'to pay themselves large salaries for services performed for the
railroad, and thus loot and consume all of the substance of
the companies before they can be gotten rid of by due course
of law.

" Your petitioners further charge that the said conspirators
intend, if they can get possession of the properties of the
defendant companies, to pay out of the money belonging to
them large sums which they have contracted to pay in their
efforts to enforce their fraudulent and fictitious claims. And
your petitioners further charge that, unless restrained, these
conspirators, who are insolvent, will, if they get possession of
the funds of the defendant companies, thus squander and
waste the same, and when the properties are restored to the
companies they will be found to have been despoiled and dam-
aged irreparably."

There is much more to the same effect, all of which is veri-
fied by affidavits. But I need not refer to it, for surely enough
has been said, it seems to me, to vindicate the propriety of
Judge Kelley's action in deciding to pause and to hear counsel
on all the questions brought before him, before taking final
action in the matter.

But be that as it may, he was acting judicially, and that
ought to end the case, so far as *this* proceeding is concerned.

And now, having said this much, I will only add that I can
but regret the action of this court.

If this is a proper case for a *mandamus*, it will be difficult to
determine hereafter what functions of the judiciary in Vir-
ginia are judicial and what are ministerial, and thus confusion
will inevitably result. At all events, with my views of the

case, I feel constrained to enter my dissent from the opinion of the court and the order to be entered.

FAUNTLEROY, J., concurred in the opinion of LEWIS, P.

MANDAMUS ISSUED.