# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 4, 2000 Session

## TOWN OF GREENEVILLE, TENNESSEE v. JOHN O. HARDIN, ET AL.

**Direct Appeal from the Circuit Court for Greene County**
**No. 00CV075      John K. Wilson,  Judge**

### FILED FEBRUARY 15, 2001

### No. E2000-00827-COA-R3-CV

---

This is a suit by the Town of Greeneville to condemn a right-of-way for a sanitary sewer line over the property of John O. Hardin and Peggy Hardin, Defendants.  The Hardins contested Greeneville's right to condemn in the Trial Court and, after an adverse ruling, appeal to this Court.  We affirm.

**Tenn.R.App.P.  3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Jeffrey A. Cobble, Greeneville, Tennessee, for the Appellants, John O. Hardin and wife, Peggy Hardin

G. P. Gaby, Greeneville, Tennessee, for the Appellee, Town of Greeneville

### OPINION

This is a suit by the Town of Greeneville to condemn a right-of-way for a sanitary sewer line over the property of John O. Hardin and Peggy Hardin, Defendants.  The Hardins contested Greeneville's right to condemn in the Trial Court and, after an adverse ruling, appeal to this Court.

The proof shows that the Greeneville-Greene County Airport Authority, which is established by Greeneville and Greene County pursuant to T.C.A. 42-3-104, operates an airport owned by the Authority, which employs three full-time and seven part-time employees.

There are other buildings on the property owned by the Authority, which are leased at a rental of $6000 per month to Landair and Forwardair, which employs approximately 250 people.

Both the Airport facility and the leased premises are served by separate sewer systems similar to septic tanks. Because of the deterioration of the present systems, they were condemned by the Public Health Authorities of the State of Tennessee, which required, pending remedial action, the sewage be pumped into trucks and hauled away at a cost of $2000 to $6000 per month.

The Authority determined to have a gravity system line, generally following a creek and joining an existing sewer line in the vicinity of Baileyton Road. The easement sought, insofar as the Hardins' property was concerned, contained approximately one-half acre and was approximately 1350 feet long and 20 feet wide.

The Hardins insist that by using the rights-of-way for streets in the area, fewer condemnations would be necessary, although it would be necessary to have a pressure pump. The undisputed proof shows that the expense incident to the gravity system would be more than would be required for the pressure pump system initially, but over the 50 years that it is estimated the gravity system would be viable, it was much more cost efficient than the pressure pump which would need to be tended at regular intervals, as well as replaced from time to time.

The principal thrust of this appeal is that the sewer line was mainly for the benefit of the employees of the leased property and not those who operate and use the Airport. Counsel for the Hardins argued that although it might be said that the sewer line would render a public benefit, it was not for public use and, hence, condemnation was unauthorized.

In support of the Hardins' position, counsel's supplemental brief includes passages from A Treatise on the Law of Eminent Domain in the United States (3rd Ed.) by John Lewis, wherein he points out there are two different views as to the question and concludes a narrow definition of the words "public use" is proper. (See Appendix.)

We first note that the 3rd Edition of Mr. Lewis' treatise was printed in 1909, almost a century ago and significant changes in the law of eminent domain have since transpired.

The case of City of Knoxville v. Heth, 210 S.W.2d 326, 328 (Tenn. 1948), is instructive. In that case the City of Knoxville, acting through the Knoxville Utilities Board, sought to condemn property improved with a business building adjoining the General Administrative Offices of the Knoxville Utilities Board. The Supreme Court, in the course of its opinion, points out the deference that should be accorded to the condemning authority as to what is a public use, recognizes that "the exact definition" of public use is "elastic," and then quotes extensively from other authorities:

> "Eminent domain is the right or power to take private property for public use; the right of the sovereign, or of those to whom the power has been delegated, to condemn private property for public use, and to appropriate the ownership and possession thereof for such use upon paying the owner a due compensation." 29 C.J.S., Eminent Domain, § 1.

The key to the instant litigation is whether or not the proposed taking is for a "public use". This presents a "judicial question, confided by the people to their courts, to insure a practical enforcement of this constitutional guaranty to the citizen. But where the taking is for a public use, the only remaining restriction on the sovereign power is to pay the fair and reasonable value of the property taken, generally denominated 'just compensation.'" Southern Railroad Co. v. Memphis, 126 Tenn. 267, 281, 282, 148 S.W. 662, 665, 41 L.R.A.,N.S., 828, Ann.Cas.1913E, 153; Federal Constitution, 5th Amendment; Tennessee Constitution, Article I, Section 21.

The determinations of "public use" by the state or its agencies are entitled to great weight or respect by the courts, since they relate to matters which should and must have been known by the legislative branch. New York City Housing Authority v. Muller, 270 N.Y. 333, 1 N.E.2d 153, 105 A.L.R. 905.

The term "public use", as here used, is not capable of exact definition, but is elastic, in order to keep pace with changing conditions. The cases on the subject are legion. Many will be found in an annotation in 54 A.L.R. 7 to 45, inclusive. In our judgment the best approach to the question is to be found in the following excerpt from Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 A. 834, 840: "On the whole, although the cases on this subject in Pennsylvania have been comparatively few in number, it may fairly be stated that, while firmly maintaining the principle that private property cannot be taken by government for other than a public use, they justify the conclusion that judicial interpretation of 'public use' has not been circumscribed in our State by mere legalistic formulas or philological standards. On the contrary, definition has been left, as indeed it must be, to the varying circumstances and situations which arise, with special reference to the social and economic background of the period in which the particular problem presents itself for consideration. Moreover, views as to what constitutes a public use necessarily vary with changing conceptions of the scope and functions of government, so that to-day there are familiar examples of such use which formerly would not have been so considered. As governmental activities increase with the growing complexity and integration of society, the concept of 'public use' naturally expends in proportion." It is such a well recognized principle that the generation and distribution of electric current, supply of water and gas to the people is a "public use" we do not deem it necessary to cite authority therefor. The only question, therefore, is whether or not the land sought to be condemned is such "an essential and integal [sic] part thereof" as to make its use a "public use".

In Nichols v. Central Virginia Power Co., 143 Va. 405, 130 S.E. 764, 767, 44 A.L.R. 727, it was well said: "It is difficult at times to observe the line of demarcation between private benefit and public use. When the two are thus so

-3-

blended--1 "the judicial practice in such cases is to approve the undertaking if it is capable of furthering a public use, and disregard the private benefit as a mere incident.'"

In the case at bar it will be noted that the public does use the facilities of the airport which the sanitary sewer will serve. Additionally, although the public does not in that sense use the leased property, rent payments therefrom are used to retire a bonded indebtedness, which, of course, enures to the benefit of the public.

Finally, we observe that if we were to follow the strict public use definition advanced by Mr. Lewis, property could not be condemned for industrial parks, public housing, and the like.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause is remanded for further proceedings not inconsistent with this opinion. Costs of appeal are adjudged against John O. Hardin and Peggy Hardin and their surety.


_____
HOUSTON M. GODDARD, PRESIDING JUDGE