## CIRCUIT COURT OF KING WILLIAM COUNTY

Patricia K. Waltman

v.

King William County
School Board,
Resource International, Ltd.,
and Enviroscape, Inc.

November 22, 2010

Case No. CL09-107

By Judge John C. Morrison, Jr.

This matter comes on the Complaint for Declaratory Judgment, Injunctive Relief, and Damages, for unconstitutional taking and inverse condemnation arising from construction by defendants of a "storm water retention basin" being built on school property from which the School Board discharged large volumes of polluted storm water run off directly under the property of Waltman, causing severe property damage to the Waltman property, denying the use of such property or portions thereof to the Waltmans, and causing portions of the Waltman property to be devoted to the exclusive use and occupation of storm water discharges from the School Board's retention basin.

There can be no doubt from the evidence taken in this matter that the discharge of water from the School Board's retention basin onto Waltman's property and into their pond caused substantial damage and amounted to a "taking" for which the Waltmans can seek just compensation. Article I, Section 11, of the Constitution of Virginia affords a remedy for the Waltmans. It provides that property shall not be taken for public uses absent just compensation. See *Holland v. Nelson County Service Auth.*, 68 Va. Cir. 99, 101 (Nelson County 2005). This article is "self-executing and permits

a property owner to enforce the constitutional right to just compensation in a common law action." *Id.* The cause of action sounds in contract. It arises out of an implied contract to pay for the property taken. See also, *United States v. Dickinson*, 331 U.S. 745, 747-49, 67 S. Ct. 1382, 91 L. Ed. 1789 (1947).

The School Board is not immune from the inverse condemnation suit for damages. Although the taking issue appears tort-like in nature — the drainage constitutes a continuing nuisance and trespass — the cause of action sounds in contract. See, *Jenkins v. County of Shenandoah*, 246 Va. 467, 470, 436 S.E.2d 607 (1993). In such an action, the owner has a right to "sue upon an implied contract that he will be paid therefor such amounts as would have been awarded if the property had been condemned under the Eminent Domain statute." *Burns v. Board of Supervisors*, 218 Va. 625, 627, 238 S.E.2d 823 (1977). Because it is a contract claim, the action against the School Board is not barred by sovereign immunity. See also, *Jenkins*, 246 Va. at 470; *Holland v. Nelson County Service Auth.*, *supra*. For an example of a "taking" very similar to the facts here, but in another jurisdiction, see *Columbia County v. Doolittle*, 270 Ga. 490, 512 S.E.2d 236 (1999) (finding that a continuing nuisance created by run-off from subdivision development projects which deposited silt and sediment in plaintiff's pond amounted to a taking). This case is also important to consider on the injunction issue.

The Court turns now to the question of whether the Doctrine of Sovereign Immunity bars plaintiff's request for injunctive relief against the School Board. Based on the following, it does not, and the injunctive relief prayed for will be granted.

In this case, we have a government agency, the School Board, whose immunity extends only to tort claims. See, *Kellam v. School Bd. of the City of Suffolk*, 202 Va. 252, 254, 117 S.E.2d 96 (1960), and *Cole v. Buchanan County School Bd.*, 661 F. Supp. 2d 569, 572 (W.D. Va. 2009). Persuasive language in the latter case states "the Virginia Supreme has held that local school boards are entitled to sovereign immunity, but that immunity is narrowly interpreted and only pertains to tort claims [citing *Kellam*]. Virginia's grant of sovereign immunity for tort claims . . . offers county school boards a narrow form of state protection. It should not be mistaken as an indicia of state control."

The Waltmans cite two cases in which equitable relief was an appropriate remedy for nuisances and trespass committed by a private party in extreme cases such as this. In *Nichols v. Central Va. Power Co.*, 143 Va. 405, 413-14, 130 S.E. 764 (1925), the court stated:

> Equitable jurisdiction may be involved in view of the inadequacies of the legal remedy where the injury is destructive or of a continuing character, or irreparable in its nature, and the appropriation of private property to public use

under color of law, but in fact without authority, is such an invasion of private rights as may be assumed to be essentially irremediable if, indeed, relief may be awarded *ex debito justiciae* [as matter of right].

Here, the legal remedy is clearly inadequate if the Waltmans would be forced to repeatedly file separate lawsuits incurring substantial legal fees each time the School Board caused additional damage to the property by continuing invasions of water. The Court is advised that the destructive discharges from the School Board's retention pond is continuing. In *Fancher v. Fagella*, 274 Va. 549, 556, 650 S.E.2d 519 (2007), it was stated that "under traditional equitable principles a chancellor may enjoin a continuing trespass even when each increment of trespass is trivial or the damages trifling in order to avoid a multiplicity of actions at law." In *Meager v. Appalachian Electric Power Co.*, 195 Va. 138, 146, 77 S.E.2d 461 (1953), the Supreme Court said, "injunction is the proper remedy to prevent the taking or damaging of private property for a public use without just compensation by one who is invested with the power of eminent domain." Although the remedy in these cases is directed at private parties, the holdings are instructive here.

Additionally persuasive, though not binding, are cases from other jurisdictions that do permit equitable remedies to private litigants against the state in inverse condemnation actions. For example, in a case with facts very similar to those in the case at bar, the Supreme Court of Georgia upheld an order enjoining the county from maintaining a defective drainage system which allowed excessive erosion and sedimentation onto plaintiff's land from using the plaintiff's pond as a retention pond. *Columbia County v. Doolittle, supra.* The court explicitly found that the trial court did not err in rejecting the defense of sovereign immunity. See also, 27 Am. Jur. 2d, *Eminent Domain*, § 769.

Defendants cite the case of *Hinchey v. Ogden*, 226 Va. 234, 307 S.E.2d 891 (1983), for the proposition that "the sovereign is immune from suits in equity to restrain the government from acting or compelling it to act." The *Hinchey* court cited this proposition as a "general rule" and in fact cited interesting text which would seem to render that holding inapplicable to the case at bar.

The Doctrine of Sovereign Immunity from Suit, rooted in the ancient common law, was originally based on monarchial semireligious tenet that "the king can do no wrong." In modern times, it is more often explained as a rule of social policy which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities.

The public service might be hindered and the public safety endangered if the supreme authority could be subjected to suit at instance of every citizen and consequently controlled in the use and disposition of the means required for the proper administration of government.

72 Am. Jur. 2d, *States, Territories, and Dependencies*, § 99 (footnotes omitted).

In that case, the court stated that the principle justification for upholding the claim of sovereign immunity was the need for order and uniformity in the administration of the affairs of government. Clearly, there is no such justification in the case at bar, and the protection sought in no way falls otherwise within the definition of the Doctrine of Sovereign Immunity as cited in *Hinchey, supra*.

To summarize, the Court finds that, pursuant to the Complaint for Declaratory Judgment, there has been the requisite taking to establish an inverse condemnation and will order that a trial be set as expeditiously as possible to determine what damages should be awarded to the plaintiff, if necessary after compliance with the final paragraph of this letter.

Additionally, the Court will issue a mandatory injunction requiring the School Board to make reasonable investigation of an alternative discharge to the perennial stream which is located on School Board property, about which there was testimony at the hearing on August 30, 2010, or such other alternative as will accomplish the result of terminating all storm water discharge from the retention pond to the Waltman property, and that such alternate discharge be implemented and established as expeditiously as possible after approval by the Court. If counsel cannot agree upon a timeline for accomplishing this Order, the Court will determine same after hearing from counsel.

The Court reminds all parties that, because of the length of the hearing on August 30, 2010, regarding the inverse condemnation and injunction issues as to the defendant, School Board, Resource and Enviroscape have not been heard except that the demurrers previously filed have been overruled. There should be time arranged for both defendants to argue their positions in this case if they be so advised.

All of the above summary will be delayed until the parties complete settlement negotiations by mediation or other means to be completed by January 31, 2011.